WK:AA
F. #2018R00425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

PATRICK POUX,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 22-CR-117 (BMC) (RML)
(T. 18, U.S.C., §§ 287, 982(a)(2),
982(b)(1), 1014, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.    The Defendant and Relevant Entities

1.    The defendant PATRICK POUX was a resident of Brooklyn, New York. POUX principally worked out of an office located at 110-20 Jamaica Avenue in Richmond Hill, New York.

2.    Gold Street Financial Inc. ("Gold Street") was established in 2007. Its registered address was 325 Gold Street in Brooklyn, New York. Gold Street had no operations, paid no employee salaries and did not file any business income tax returns.

3.    iLab Marketing Group Corporation ("iLab") was established in 2005. Its registered address was 103-24 217 Lane in Queens Village, New York. iLab had no operations, paid no employee salaries and did not file any business income tax returns.

4.    Heal Home Owners Inc. ("Heal Home Owners") was established in 2013. Its registered address was 3100 Sweetwater Road, #1304, in Lawrenceville, Georgia. The

defendant PATRICK POUX was recorded, in New York Department of State records, as the Chief Executive Officer of Heal Home Owners.  Heal Home Owners had no operations, paid no employee salaries and did not file any business income tax returns.

5.	Prime Time Lending Inc. ("Prime Time Lending") was established in 2019.  Its registered address was 1999 Parker Court, Suite D, in Stone Mountain, Georgia.  The defendant PATRICK POUX was recorded, in Georgia Department of State records, as the Chief Executive Officer of Prime Time Lending.  Prime Time Lending had no operations, paid no employee salaries and did not file any business income tax returns.

6.	Construction and Cabling Inc. ("Construction and Cabling") was established in 2019.  Its registered address was 110-20 Jamaica Avenue in Richmond Hill, New York.  The defendant PATRICK POUX was recorded, in New York Department of State records, as the service of process recipient for Construction and Cabling.  Construction and Cabling had no operations, paid no employee salaries and did not file any business income tax returns.

II.	Overview of the Schemes

7.	As described below, the defendant PATRICK POUX engaged in multiple fraud schemes using shell companies by falsely representing, in fraudulent tax returns and COVID relief applications, that those companies had employees and revenue.  In the first scheme (the "Tax Fraud Scheme"), POUX generated millions of dollars in unearned tax refunds using fabricated tax forms purportedly issued by shell companies.  In the second scheme (the "COVID-19 Relief Fraud Scheme"), POUX applied for COVID-19 emergency assistance using materially false representations.  As a result, POUX fraudulently obtained hundreds of thousands of dollars in funds earmarked by the federal government for distressed businesses.

2

III.    Tax Fraud Scheme

8. From approximately 2016 until 2019, the defendant PATRICK POUX, together with others, used false wage and withholding information to prepare and file income tax returns for the purpose of obtaining tax refunds to which they were not entitled.

9. The defendant PATRICK POUX prepared, filed and caused to be filed fictitious Forms W-2 and W-3, and United States Individual Income Tax Returns based thereon. A Form W-2 is an annual tax form that an employer sends each of its employees and the Internal Revenue Service ("IRS"). It lists the employee's annual wages and the amount of tax withheld from that employee's paychecks. A Form W-3 is the tax form that an employer provides to the IRS specifying the total amount the employer paid to all its employees as well as the total federal income, Social Security and Medicare taxes the employer withheld from its employees.

10. In furtherance of this scheme, the defendant PATRICK POUX created false Forms W-2 and W-3 for shell companies that were not active and had no employees, including iLab, Heal Home Owners, and Gold Street (collectively, the "Tax Fraud Entities"). POUX further offered to provide co-conspirators with such Forms W-2, which falsely reported that one of the Tax Fraud Entities (a) employed the co-conspirators at one of the Tax Fraud Entities; and (b) had withheld income such that those co-conspirators were entitled to substantial refunds from the IRS. In return, POUX demanded, and received, a percentage of such refunds.

11. The defendant PATRICK POUX's generation of these fraudulent documents resulted in the filing, by POUX and his co-conspirators, of individual tax returns claiming approximately $2,831,066 in tax refunds. POUX received a portion of the refunds as payment for his role in the scheme.

IV.     COVID-19 Relief Fraud Scheme

12.     In approximately 2020, the defendant PATRICK POUX engaged in a scheme to defraud the Small Business Administration ("SBA"), which administered the Paycheck Protection Program and Economic Injury Disaster Loan program—two federal COVID-19 emergency-relief funding initiatives intended to assist distressed businesses. Specifically, POUX submitted approximately nine false loan and grant applications, either in his own name or on behalf of entities that he was associated with or controlled. These fraudulent applications sought more than $300,000 in loans and grants. As a result of these applications, POUX received more than $180,000 in loans and grants to which he was not entitled.

A.     The COVID-19 Pandemic in the United States

13.     In about January 2020, the Secretary of the United States Department of Health and Human Services declared a national public health emergency under Title 42, United States Code, Section 247d as a result of the spread of a novel coronavirus COVID-19 within the United States. On or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020 as a result of the rapid spread of COVID-19.

B.     The Paycheck Protection Program

14.     On or about March 27, 2020, the CARES Act was enacted. The CARES Act was a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a

4

program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

15. To obtain a PPP loan, qualifying businesses, including sole proprietors, were required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required recipient businesses, through an authorized representative, to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan. For example, in the PPP loan application, recipient businesses, through an authorized representative, were required to state, among other things, their average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the businesses were eligible to receive under the PPP. The recipient businesses were also required to provide documentation supporting the information contained in the PPP loan application.

16. PPP loan proceeds were required to be used by the recipient businesses on certain permissible expenses, such as payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the recipient businesses spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds, and if the recipient used a certain percentage of the proceeds on payroll costs.

17. The PPP was overseen by the SBA, which had authority over all PPP loans. Individual PPP loans, however, were issued and approved by private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

C. The Economic Injury Disaster Loan Program

18. The Economic Injury Disaster Loan program ("EIDL") was an SBA program that provided low-interest financing to small businesses, renters and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs of up to $2,000,000 to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

19. To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. Sole proprietors were eligible for EIDLs so long as they had verifiable business income during the 12-month period preceding the disaster.

20. In the case of EIDLs for COVID-19 relief, the 12-month period was the period preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

21. EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor, Rapid Finance. The amount of the loan, if the application was approved, was determined based, in part, on the information provided in the application about employment, revenue and cost of goods, as described above. Any funds issued under an EIDL were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs and business obligations, such as debts, rent and mortgage.

D.      <u>POUX's Fraud Scheme</u>

22.      The defendant PATRICK POUX submitted, or caused to be submitted, online applications to obtain funds through the PPP and EIDL programs. These applications were submitted on behalf of entities with which POUX was associated and controlled—Heal Home Owners, Construction and Cabling, and Prime Time Lending (collectively, the "SBA Fraud Entities")—as well as for POUX on his own behalf as a sole proprietor. The loan applications and supporting documentation that POUX submitted contained materially false and fraudulent information, including that the SBA Fraud Entities and POUX as a sole proprietor had payroll costs and legitimate intended uses of the loan proceeds—all of which was false and specifically designed to mislead the SBA and financial institutions administering the PPP and EIDL programs into disbursing various funds, which they did.

23.      Specifically, the defendant PATRICK POUX, on behalf of himself as a sole proprietor and the SBA Fraud Entities, submitted false PPP and EIDL applications seeking a total of approximately $310,333 in PPP and EIDL loans and $12,000 in EIDL grants. As a result, POUX received approximately $181,500 in loans and $2,000 in grants to which he was not entitled. After receiving these loan and grant proceeds, POUX spent the funds on purchases of luxury goods from stores such as Saks Fifth Avenue and personal expenses such as a life coach.

COUNT ONE<br>(False Claims)

24.      The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

25.      In or about and between 2016 and 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK

POUX, together with others, did knowingly and intentionally make and present claims to an agency of the United States, to wit: approximately 250 claims seeking a total of approximately $2,831,066 in tax refunds from the United States Internal Revenue Service, knowing such claims to be false, fictitious and fraudulent.

(Title 18, United States Code, Sections 287, 2 and 3551 et seq.)

## COUNT TWO
(False Statements to the Small Business Administration)

26. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

27. On or about and between March 31, 2020 and September 22, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PATRICK POUX, together with others, did knowingly make one or more false statements and reports for the purpose of influencing the action of the SBA in connection with one or more applications, advances, discounts, purchases, purchase agreements, repurchase agreements, commitments, loans, and insurance agreements and applications for insurance and guarantees, and any changes and extensions of any of the same, by renewal, deferment of action or otherwise, and the acceptance, release and substitution of security therefor, to wit: POUX provided false information in fraudulent PPP and EIDL applications to induce the SBA to approve loans and grants for (a) entities controlled by or associated with POUX, Heal Home Owners, Construction and Cabling and Prime Time Lending; and (b) POUX as a sole proprietor.

(Title 18, United States Code, Sections 1014, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWO

28. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

29. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2018R00425

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

PATRICK POUX,

Defendant.

# INFORMATION

(T. 18, U.S.C., §§ 287, 982(a)(2), 982(b)(1), 1014, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p))

*A true bill.*

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Foreperson*

*Filed in open court this* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ *day,*

*of* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ *A.D. 20* \_ \_ \_ \_ \_

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

*Clerk*

*Bail, $* \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_

***Adam Amir, Assistant U.S. Attorney (718) 254-6116***